UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| JONATAN PORNOMO,<br><br>                                Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                                Defendant. | Civil Action No. 3:14–CV–307 |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 14) ("Motion") pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Plaintiff Jonatan Pornomo ("Plaintiff") opposes this Motion. For the reasons below, the Court hereby GRANTS the Motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

#### A. *Procedural Posture*

This case arises out of a motor coach bus accident that occurred on May 31, 2011. On April 28, 2014, Plaintiff, the administrator of the estate of Sie Giok Giang, filed a complaint in this Court against Defendant, pursuant to the Federal Tort Claims Act ("FTCA"), for a wrongful death allegedly caused by the negligence of the Federal Motor Carrier Safety Administration ("FMCSA"), an agency within the United States Department of Transportation ("DOT"). *See* ECF No. 1. In his complaint, Plaintiff essentially alleges that FMCSA was negligent in allowing Sky Express Inc. ("Sky Express") to operate at the time of its accident in violation of federal law. ECF No. 1.

On August 21, 2014, Defendant filed the instant Motion along with an accompanying Memorandum in Support, alleging that this Court lacks subject matter jurisdiction over Plaintiff's wrongful death action because Plaintiff cannot establish that Defendant waived

sovereign immunity. ECF Nos. 14, 15. Defendant argues that the "discretionary function exception" to the FTCA, 28 U.S.C. § 2680(a), mandates that this action be dismissed for lack of subject matter jurisdiction, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. Alternatively, Defendant argues that the Court lacks subject matter jurisdiction over the instant action because Plaintiff's complaint fails to satisfy the FTCA's private liability analogue requirement. *See* 28 U.S.C. §§ 2674, 1346(b). Subsequently, on September 4, 2014, Plaintiff filed his opposition to the Motion and Defendant, in turn, filed its reply on September 10, 2014. This matter is now ripe for review.

      B. *Statutory and Regulatory Background*

Congress has directed the Secretary of Transportation to "determine whether an owner or operator is fit to operate safely commercial motor vehicles, utilizing among other things ... [the] safety inspection record of such owner or operator." 49 U.S.C. § 31144(a)(1); *see also* Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's amended complaint ("Def.'s Mem.") at 2. To fulfill Congress' directive, the Secretary must "maintain by regulation a procedure for determining the safety fitness of an owner or operator." 49 U.S.C. § 31144(b); *see also id.* § 31136. With regard to the transportation of hazardous materials, Congress has declared that "an owner or operator who the Secretary determines is not fit may not operate in interstate commerce beginning on the 46th day after the date of such fitness determination and until the Secretary determines that such owner or operator is fit." *Id.* § 31144(c)(3); *see also id.* § 31144(c)(5).

The Secretary's authority to regulate the procedures of such fitness determinations has been delegated to FMCSA. *See* 49 U.S.C. § 113(f); 49 C.F.R. § 1.87(f). The Secretary has promulgated regulations establishing standards and procedures for evaluating the safety and fitness of commercial motor vehicle owners and operators.

FMCSA has established a fitness determination procedure as directed by Congress. *See* 49 C.F.R. Pt. 385. Under this regulatory framework, a motor carrier is either "unrated" or is

2

assigned one of three possible safety ratings: "satisfactory," "conditional," or "unsatisfactory." *See id.* § 385.3; Def.'s Mem. at 3. A motor carrier receives a "satisfactory" safety rating if it has in place "adequate safety management controls" to meet the safety fitness standard prescribed in § 385.5.[1] *Id.* A motor carrier is assigned a "conditional" safety rating if it "does not have adequate safety management controls in place to ensure compliance with the safety fitness standard that could result in" violation of safety regulations. *Id.* § 385.3.

An "unsatisfactory" safety rating means that the carrier "does not have adequate safety management controls in place to ensure compliance with the safety fitness standard" and that, as a result, violation of the safety regulations has occurred. *Id.* The factors considered in determining a carrier's safety rating include information collected during "on-site examination[s] of motor carrier operations," which are termed "compliance reviews."[2] *Id.* §§ 385.3, 385.7. During a compliance review, FMCSA evaluates the motor carrier's compliance with the Federal Motor Carrier Safety Regulations[3] and Hazardous Materials Regulations.[4] *See id.* Pt. 385, App. B § (d); Def.'s Mem. at 3. Specifically, based on the information collected from the compliance review, FMCSA assigns the carrier a proposed safety rating based on any regulatory violations found. *Id.* § 385.9(a); *see* §§ 385.5, 385.7, & 385.9(a) (explaining that the agency issues the motor carrier a rating after considering the adequacy of the motor carrier's safety management controls, frequency and severity of safety violations, and other safety-related factors).

Pursuant to FMCSA's safety ratings procedures, a hazardous materials carrier that receives an "unsatisfactory" safety rating is prohibited from operating a commercial motor

---

[1] All citations are to Title 49 of the Code of Federal Regulations unless otherwise noted.
[2] Specifically, the FMCSA conducts on-site compliance reviews of whether a carrier or operator meets safety standards pertaining to matters such as drivers' hours of service, vehicle maintenance and inspection, and license requirements. 49 C.F.R. § 385.3; *see also* Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Amended Complaint ("Def.'s Mem.") at 2.
[3] *See* 49 C.F.R. parts 350–399.
[4] *See* 49 C.F.R. parts 171–180.

vehicle in interstate or intrastate commerce beginning on the 46th day after the date of the safety fitness determination. *Id.* § 385.13(a)(1); *see also* 49 U.S.C. § 31144(c)(3); Def.'s Mem. at 3. FMCSA may also revoke the operating registration of a motor carrier rated "unsatisfactory." 49 C.F.R. § 385.13(e).

A proposed overall "unsatisfactory" safety rating is provisional and does not become final until 45 days after the carrier receives written notice of the proposed rating. *Id.* § 385.11(c)(1); Def.'s Mem. at 4. Pursuant to 49 C.F.R. § 385.15, a carrier may seek administrative review of a proposed or final safety rating within 90 days of its issuance. *Id.* §§ 385.15(a), (c)(2). Carriers assigned an "unsatisfactory" rating, however, are encouraged to file such requests within 15 days to allow the agency to issue a "final decision" before the prohibition on operating accompanying such a rating takes effect. *Id.* § 385.15(c)(1).

In addition to, or instead of, seeking administrative review under § 385.15, a carrier may request an upgrade of its safety rating under § 385.17 based on steps the carrier has taken to correct violations found during the compliance review. Def.'s Mem. at 3. The request "must include a written description of corrective actions taken, and other documentation the carrier wishes the FMCSA to consider." *Id.*; 49 C.F.R. § 385.17(a)(c). Such "upgrade requests" are separate from petitions for administrative review under § 385.15, and may be filed at any time, including after the proposed safety rating becomes final and operating authority is revoked. *See* 49 C.F.R. § 385.17(a). Upon receipt of an upgrade request, the agency must determine whether "the motor carrier has taken the corrective actions required and [whether] its operations currently meet the safety standard and factors specified in [49 C.F.R.] §§ 385.5 and 385.7." *Id.* § 385.17(h), (i); *see* Def.'s Mem. at 3-4. The FMCSA Field Administrator for the designated service center makes a determination on the request for change in safety fitness rating "based upon the documentation the motor carrier submits and any additional relevant information." Def.'s Mem. at 3 (citing 49 C.F.R. § 385.17(d)). If the agency denies the upgrade request, the carrier may seek administrative review of that denial under § 385.15(c)(2).

A request for change in safety rating based upon corrective action does not stay the effective date (i.e., the 46th day) of a final safety rating that would require a carrier to cease operations. Def.'s Mem. at 4 (citing 49 C.F.R. § 385.17(f)). However, at the time of the crash that led to the subject of the instant case, § 385.17 (f) read in part, "if the motor carrier has submitted evidence that corrective actions have been taken . . . and the FMCSA cannot make a final determination within the 45-day period, the period before the proposed safety rating becomes final may be extended for up to 10 days at the discretion of the FMCSA." *Id.*[5]

C. *Factual Allegations*

On Tuesday, May 31, 2011, the decedent, Sie Giok Giang, was a passenger on a Sky Express motor coach bus, which was travelling north on Interstate 95. Am. Compl. ¶ 7. As a private motor carrier of interstate transportation, Sky Express was subject to regulation by FMCSA. *Id.* ¶¶ 12-13. Around 4:45 a.m., in Caroline County, Virginia, the Sky Express bus driver fell asleep while the bus was going approximately 65 miles per hour. *Id.* ¶ 11. As a result, the bus drifted from its lane onto a sloped, grass embankment, struck a guard wire, and then flipped and rolled before coming to a rest. *Id.* Sie Giok Giang died as a result of injuries she sustained in the accident on May 31, 2011. *Id.* ¶¶ 9-10.

On April 7, 2011, along with other review dates not directly relevant in the instant matter, FMCSA conducted a compliance review of Sky Express' operations. Am. Compl. ¶ 22. After the review, "FMCSA determined that Sky Express did not have adequate safety management controls in place to ensure compliance with" FMCSA's safety fitness standards. Def.'s Mem. at 4. Five days later, on April 12, 2011, FMCSA sent Sky Express an official notice stating that the proposed "unsatisfactory" rating would become final and Sky Express would be prohibited from operating commercial motor vehicles in 45 days –that is, on May 28, 2011—

---

[5] The authority to grant a 10 day extension of the effective date of a proposed "Unsatisfactory" rating contained in 49. C.F.R. § 385.17(f) existed in 1991 when FMCSA promulgated the safety fitness procedures and rating rule. *See* Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Amended Complaint ("Def.'s Mem.") at 3 n.2. As Defendant notes in its moving papers, "[t]he FMCSA rescinded the 10-day Agency discretionary period effective November 23, 2012." Def.'s Mem. at 4 (citing 77 Fed. Reg. 64, 759-01 (Oct. 23, 2012)).

unless it took the steps necessary to improve its rating before that date. Am. Compl. ¶ 26. The notice also provided how to request a safety rating upgrade under § 385.17 and how to file an administrative appeal under § 385.15. Am. Compl. ¶ 26.

On May 11, 2011, Sky Express accepted FMCSA's invitation to submit a written upgrade request, pursuant to § 385. 17, to change the proposed "unsatisfactory" safety rating. *Id.* ¶ 27. Sky Express' written request detailed procedures and actions Sky Express implemented for the purposes of achieving compliance with FMCSA's regulations. *See* Def.'s Mem. Ex. 1.[6] Specifically, Sky Express' request described the corrective actions it had taken with respect 49 C.F.R. parts 382, 390, 391, 392, 395, and 396, which included the deficient areas identified in the notice of proposed "Unsatisfactory" safety rating. *Id.* On May 12, 2011, personnel from the North Carolina Division and Southern Service Center held a conference call to discuss Sky Express' action plan and whether the proposed safety rating should be upgraded. *Id.* As a result of the conference call, "FMCSA decided that it needed additional information to verify the corrective action Sky Express described in its plan and whether the company had adequate safety management controls." Def.'s Mem. at 5. FMCSA determined that an additional compliance review would be conducted to collect the necessary information to make a final determination concerning Sky Express' safety rating. Def.'s Mem. Ex. 1.

Accordingly, on May 12, 2011, by letter, the North Carolina Division Administrator's office informed the FMCSA Field Administrator that: (1) steps had not been taken to adequately correct the violations found during the April 7, 2011 compliance review[7]; (2) it would conduct a

---

[6] In considering Defendant's Rule 12(b)(1) motion to dismiss, the Court considers evidence outside of the pleadings in conjunction with the instant motion. *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir.2004) (stating that, in motion to dismiss for lack of subject matter jurisdiction, a court may consider evidence outside the pleadings without converting it to a summary judgment motion).

[7] Defendant notes in its Memorandum that "the correspondence" the North Carolina Division Administrator's office ("DA") sent to the FMCSA Field Administrator ("FA") was simply a recommendation concerning Sky Express' corrective action plan. Def.'s Mem. at 6 n.4. Furthermore, Defendant reports that the DA expressed the opinion that corrective action was not sufficient, but he did not state that the FMCSA should issue a final determination denying Sky Express a rating upgrade. *Id.*

follow-up compliance review; and (3) Sky Express would need to submit specific information, identified in the letter, during the review. Def.'s Mem. Ex. 1.

On May 13, 2011, the FMCSA issued two official notices, by two separate letters, to Sky Express. In one of the letters, FMCSA denied Sky Express' request for a safety upgrade, holding that Sky Express' corrective plan "did not include sufficient evidence to justify an upgrade to . . . [Sky Express'] proposed safety rating, and it failed to demonstrate that adequate corrective actions have been taken to address" the violations found during the April 7, 2011 compliance review. *Id.* But the notice went on to state,

> FMCSA believes that these correctives actions are not sufficient to correct the deficiencies discovered during the compliance review. Therefore, the North Carolina Division office will be conducting a Compliance Review prior to June 7, 2011, at the principle place of business as listed on the Motor Carrier Identification Report (MCS150). During this compliance review, the attached list of documents will need to be available at the principle place of business for Sky Express Inc. for examination by [the] agency's safety investigators.

(*Id.*). On the same day, May 13, 2011, FMCSA issued another letter, notifying Sky Express that FMCSA would extend Sky Express' 45 day deadline to submit a sufficient and acceptable corrective action plan by 10 days, thereby extending the carrier's deadline from May 28, 2011 to June 7, 2011.[8] Am. Compl. ¶ 29. According to the Field Administrator for the FMCSA, because of "the scope of review and availability of FMCSA personnel, FMCSA determined that the review could not be completed before May 28, 2011, which was the effective date of the proposed *Unsatisfactory* rating. Accordingly, the period before the proposed *Unsatisfactory* rating

---

[8] Under the regulation in effect in 2011, according to the FA, "if a motor coach carrier's written request was insufficient for the Agency to make a determination concerning whether its proposed rating should be upgraded, the Agency was authorized to grant a 10-day extension of the period before the proposed rating became final." Def.'s Mem. Ex. 1. Further, according to the FA, "authority for the extension was contained in 49 C.F.R. § 385.17(f)," which stated:

> The filing of a request for change to a proposed or final safety rating under this section does not stay the 45-day period specified in § 385.13(a)(1) for motor carriers transporting passengers or hazardous materials. If the motor carrier has submitted evidence that corrective actions have been taken pursuant to this section and the FMCSA cannot make a final determination within the 45-day period, the period before the proposed safety rating becomes final may be extended for up to 10 days at the discretion of the FMCSA."

(*Id.*).

became effective was extended by 10 days pursuant to the authority granted under 49. C.F.R. § 17(f)." Def.'s Mem. Ex. 1. According to its letter, FMCSA, upon Sky Express' "good faith effort," issued a 10 day extension of the effective date of the proposed "unsatisfactory" rating "to provide additional time for the North Carolina Division to conduct a follow-up Compliance Review"[9] and for "Sky Express to attain full compliance in all areas in which they were found deficient." *Id.*

On May 23, 2011, Sky Express submitted an "update,"[10] Def.'s Mem. at 6, to its May 11, 2011 corrective action plan via e-mail with an attachment titled, "Corrective Update," Def.'s Mem. Ex. 1. The 10 day extension, as previously mentioned, made the effective date of the proposed "unsatisfactory" rating June 7, 2011. Def.'s Mem. at 7. The motor coach crash involving Sky Express occurred on May 31, 2011. *Id.*

## II.   LEGAL STANDARD

### A.   *Rule 12(b)(1)*

Federal Rule of Civil Procedure 12 allows for a number of defenses to be raised to a complaint at the pleading stage. Among these is the defense that a Court lacks subject matter jurisdiction over the case. S*ee* Fed. R. Civ. P. 12(b)(1). Once subject matter jurisdiction has been challenged, it is the plaintiff's "burden of proving that subject matter jurisdiction exists." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *see Piney-Run Pres. Ass'n Cnty Com'rs of Carrol Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008).

When considering a Rule 12(b)(1) motion to dismiss, unlike a motion to dismiss pursuant to Rule 12(b)(6), "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one

---

[9] According the FMCSA Field Administrator's declaration attached to Defendant's Memorandum, FMCSA was unable to make a final determination concerning Sky Express' safety rating before the proposed "unsatisfactory" rating became effective because the compliance review could not be completed before May 28, 2011. *Id.*

[10] The plain language of the letter reads as follows: "You may submit another request for a change to the proposed or final 'Unsatisfactory' safety rating and SMP for reconsideration . . . ." Def.'s Mem. Ex. 1.

for summary judgment." *Velasco v. Gov't. of Indon.,* 370 F.3d 392, 398 (4th Cir.2004) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982)). Therefore, this Court may weigh the evidence and resolve factual disputes regarding jurisdiction by considering evidence outside the complaint. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir.1995). Even though a Rule 12(b)(1) motion to dismiss is not converted into a motion for summary judgment, district courts "should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768. Only when "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law" should the Court grant the motion. *Id.*

Additionally, it is well established that the United States, as a sovereign, is immune from suit except to the extent that it has consented to be sued by statute. *See United States v. Dalm*, 494 U.S. 596, 608 (1990); *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981); *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Welch v. United States*, 409 F.3d 646, 650-51 (4th Cir. 2005). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471 (1994). Therefore, in suits where the federal government is named as a defendant, it is the plaintiff's burden to show that an unequivocal waiver exists. *Welch*, 409 F.3d at 651.

### III. DISCUSSION

According to Defendant, Plaintiff's wrongful death action is barred by both: (1) the FTCA's discretionary function exception; and (2) the FTCA's private liability analogue requirement. Def.'s Mem. at 7. The Court finds the discretionary exception dispositive and thus will not address the parties' arguments related to the private liability requirement.

A. *Parties' Arguments*

Defendant argues that Plaintiff's wrongful death claim is barred, and the Court stripped of subject matter jurisdiction, by the FTCA's discretionary function exception. Defendant argues

9

that FMCSA's decisions regarding a motor carrier's compliance with FMCSA's regulations, including whether a carrier should be permitted to operate in interstate commerce, are decisions taken under the Agency's statutory authority under 49 U.S.C. § 31136(a) to prescribe minimum safety standards for commercial motor vehicles and to determine safety fitness under 49 U.S.C. § 31144.  Thus, Defendant argues, FMCSA made compliance and safety decisions to which the discretionary function exception of the FTCA applies.  *Id.* at 8.  Defendant energetically argues that FMCSA, contrary to Plaintiff's assertion, had the discretion to grant the 10 day extension to facilitate its review and final determination.  *Id.* at 8-9.  Defendant avers that the federal regulation in effect at the time, 49 C.F.R. § 385.17(f), provided that the decision to grant Sky Express a 10 day extension—which Plaintiff challenges—was expressly vested to the discretion of FMCSA.  Section 385.17(f), the federal regulation at issue, provides,

> If the motor carrier has submitted evidence that corrective actions have been taken pursuant to this section and the FMCSA cannot make a final determination within the forty-five day period, the period before the proposed safety rating becomes final may be extended for up to ten days at the discretion of the FMCSA.

(Def.'s Mem. at 9).  Defendant contends that, based on the plain language of the then-existing federal regulation, there can be no dispute that the decision made was a discretionary one.  *Id.*  Accordingly, because the discretionary function exception applies, there has been no waiver of sovereign immunity.  *Id.*

Additionally, reasserting that the discretionary function exception applies, Defendant argues that Plaintiff's attempt to avoid the discretionary function exception and establish jurisdiction fails for two reasons.  First, the Court is forbidden by the Hobbs Act, 28 U.S.C. § 2342(3)(A), from considering Plaintiff's request to find 49 C.F.R. § 385.17(f), as it existed in 2011, invalid on the basis that it was promulgated in excess of the Agency's statutory authority given to FMCSA under 49 U.S.C. § 31136(a).  Def.'s Mem. at 10-11.  Second, Defendant argues that there is no legitimate dispute that both conditions set forth in 49 C.F.R. 385.17(f) were satisfied and, therefore, the regulation expressly granted the FMCSA the "discretion" to issue a

10 day extension of the period before Sky Express' proposed safety rating became final. *Id.* at 11-14.

In sum, Plaintiff argues that the Court has subject matter jurisdiction in the instant case under the FTCA because FMCSA was not performing discretionary functions or duties "when their negligent acts and/or omissions proximately caused the death" of the decedent. Pl.'s Opp'n at 7. Instead, Plaintiff argues that FMCSA was violating "mandatory, non-discretionary requirements of a federal statute [49 U.S.C. §§ 31144(c)(2)-(3),(c)(5)] and a federal regulation [49 C.F.R. 385.17(f) as it existed in 2011]." *Id.* Plaintiff essentially raises two arguments in its amended complaint as to why he believes that the discretionary function exception should not apply and subject matter jurisdiction should exist.

First, Plaintiff argues that FMCSA lacked legal authority or discretion to extend the 45 day period under 49 U.S.C. § 31144, thereby violating that federal statute. Am. Compl. ¶ 33-34; Pl's Opp'n 10-11. He argues that 49 C.F.R. § 385.17(f) is contrary to 49 U.S.C.§§ 31144 and requests the Court to find the regulation, as it existed in 2011, invalid and improperly promulgated in excess of the Agency's statutory authority.[11] Pl.'s Opp'n 11-13.

Alternatively, Plaintiff argues that FMCSA violated federal regulations because it did not comply with clear and mandatory standards of conduct established in the requirements of 49

---

[11] Specifically, Plaintiff argues that, per the governing statutes, 49 U.S.C. § 31144(c)(2) and (c)(5),

> the Secretary of the USDOT, and his delegated agent, the FMCSA . . . are not authorized or permitted by these governing statutes to extend an interstate passenger motor carrier's forty-five day deadline to submit a written corrective action plan to address safety deficiencies, and to the contrary, the FMCSA is required by these statutes to prohibit such an interstate carrier from resuming interstate transportation operations unless and until the carrier has demonstrated to the FMCSA that the carrier is fit and its safety operations and practices are satisfactory.

(Am. Compl. ¶ 33). In his opposition, Plaintiff confirms that she is attacking the validity of 49 C.F.R. § 385.17(f), as it existed in 2011, before proceeding to her alternative argument. Pl.'s Opp'n at 13 ("Assuming that the U.S. Department of Transportation and its agent, the FMCSA, had the legal authority to promulgate . . . 49 C.F.R. 385.17(f), even though the version of this regulation in effect at the time directly conflicted with the requirements of the applicable federal statute, 49 U.S.C Sec. 31144(c)(3) and (c)(5). . . .")

C.F.R. § 385.17(f). Am. Compl. ¶ 36-38; Pl.'s Opp'n 9-12. Because it issued an extension to Sky Express before Sky Express complied with the two conditions for obtaining an extension, Plaintiff argues that FMCSA negligently caused the death of Plaintiff's decedent by allowing the motor carrier to operate at the time of the accident in violation of federal law. *Id.* Plaintiff asserts, specifically, that FMCSA did not comply with the regulation's prescribed, non-discretionary course of action because: (1) Sky Express "had not submitted evidence that corrective actions had been implemented"; and (2) the FMCSA had made a "final determination" to deny the request within 45 days. Pl.'s Opp'n at 13-14. Concerning the regulation's first condition precedent, Plaintiff argues that FMCSA's May 13, 2011 written notification denying Sky Express' request to upgrade the proposed "unsatisfactory" safety rating "unequivocally" states that Sky Express failed to submit evidence of corrective actions to remedy its safety violations. *See* Pl.'s Opp'n at 12. Plaintiff notes that the letter expressly states that Sky Express "failed to demonstrate that adequate corrective actions have been taken to address the acute and/or critical violations cited during the [April 7, 2011] compliance review." *Id.* at 12-13. Plaintiff argues that because the letter clearly concludes that Sky Express "failed to provide sufficient evidence that the violations cited in the compliance review have been corrected," Sky Express had not met the first regulatory prerequisite for extending the 45 day deadline, when the carrier's proposed "unsatisfactory" safety rating would become final and its operating authority would be revoked. *Id.* at 13. Also, Plaintiff argues that FMCSA failed to comply with the second mandatory directive in the 49 C.F.R. 385.17(f). In sum, Plaintiff argues that the May 13, 2011 notification letter constituted a "final determination" on the motor carrier's request for change to its safety rating. To support its position, Plaintiff points to the letter's language that reads, in relevant part, that the FMCSA "is denying [Sky Express'] request." *Id.* at 14. Because the May 13, 2011 letter "informs Sky Express, Inc. that the FMCSA has considered the bus carrier's written request for change to its Unsatisfactory safety rating, along with the carrier's [corrective action plan] and other relevant evidence, and has decided to deny the carrier's

12

request" Plaintiff submits that a final determination had been made and thus, the second condition precedent of the regulation was not triggered. *Id.* at 13-14. As such, "the negligent acts and omissions of Defendant's officials, supervisors, employees, etc. do not fall within the discretionary function exception to the FTCA's wavier of tort liability of the federal government, and the United States is not immune from liability to Plaintiff."

In reply, regarding whether the FMCSA was negligent because it did not comply with the condition precedents of 49 C.F.R. § 385.17(f), Defendant scrutinizes the plain language of the relevant documents, which Plaintiff analyzed, to arrive at the factual conclusion that that there was "sufficient" corrective evidence submitted by Sky Express and there was not a final order determined by FMCSA. Since the two condition precedents of the regulation were satisfied, Defendant argues, FMCSA had discretion to grant a 10 day extension.

B. *Analysis*

Whether the Court has jurisdiction to adjudicate this case turns on an analysis of the scope of the discretionary function exception. The exception provides that the United States is not liable for any claim "based upon the exercise or performance or the failure to perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The Supreme Court has attempted to define the contours of the discretionary function exception in a series of cases, from *Dalehite v. United States,* 346 U.S. 15 (1953) and *United States v. Varig Airlines,* 467 U.S. 797 (1984), to *Berkovitz v. United States,* 486 U.S. 531 (1988) and, most recently, *United States v. Gaubert,* 499 U.S. 315 (1991). These contours, however, remain ill-defined, primarily because "courts have encountered some difficulty in applying [the discretionary function exception's] rather general terms to the myriad of fact patterns that predictably present themselves as litigants attempt to measure governmental conduct by the measuring stick of state tort law." *Baum v. United States*, 986 F.2d 716, 719–20 (4th Cir.1993).

An act or omission must pass a two-part test before it qualifies as discretionary. An act is "discretionary" if it "involves choice or judgment . . . there is nothing in that description that refers exclusively to policymaking or planning functions." *Gaubert*, 499 U.S. at 325. According to the framework established in *Berkovitz* and articulated in *Gaubert,* the act or omission must: (1) not violate a pertinent statute, regulation, or policy that prescribes a specific course of action and (2) be "of the kind that the discretionary function exception was designed to shield." *Id.* at 322-23 (quoting *Berkovitz*, 486 U.S. at 536). It must be based on considerations of public policy. *Gaubert*, 499 U.S. at 322. If a government agent is granted discretion, despite the fact that the discretion involves mere implementation of policy or planning decisions made by higher-level officials, there is a "strong presumption" that the discretion granted to the agent involves considerations of the same policies that led to the promulgation of the regulation and, in turn, there is a strong presumption that the discretionary function exception applies. *Id.* at 324. Furthermore, it is sufficient is the actions taken are "grounded in" policies of the regulatory regime. *Id.* at 323.

Application of the discretionary function exception is highly fact-specific*. Varig Airlines*, 467 U.S. at 813. The precise issue presented by the facts of this case is whether FMCSA's decision regarding a motor carrier's compliance with FMCSA's regulations, including whether a carrier should be permitted to operate in interstate commerce, are compliance and safety decisions to which the discretionary function exception of the FTCA applies. In answering this question, the Court will first consider whether the 49 C.F.R. § 385.17(f), the federal regulation in effect at the time of the crash, granted FMCSA discretion. The Court will then turn to the question of whether FMCSA's decision to grant Sky Express a 10 day extension was grounded in policy.

The first part of the inquiry is not difficult. An examination of the plain language of the regulation confirms that the decision Plaintiff challenges was expressly vested to the "discretion" of the FMCSA. 49 C.F.R. § 385.17(f). FMCSA must exercise a considerable degree of choice and

judgment when determining whether to permit a carrier to operate in interstate commerce. The regulation provides criteria to guide the exercise of FMCSA's discretion by providing that two conditions must be present in order for FMCSA to grant a carrier an extension. But they are not detailed. Regarding the first condition precedent, FMCSA must apply their expertise to determine what is and what is not "evidence" "of corrective action." *Id.* Here, FMCSA received a detailed, written corrective action plan from Sky Express but determined, using its judgment, that it needed more information to verify the contents of the action plan. *See* Def.'s Mem. at 3. The regulation does not prescribe against such a determination nor does it offer any specific direction as to what FMCSA must do thereafter. Regarding the second condition, FMCSA determined it was unable to make a final determination concerning Sky Express' operating authority registration and therefore granted the extension to provide additional time to conduct a follow-up compliance review. *Id.* In considering a carrier's request for upgrade, and hence whether a carrier's operating authority registration should be revoked, FMCSA was authorized to consider "any additional relevant information," 49 C.F.R. § 385.17(d), which would include information collected during a supplemental compliance review. It is not as if FMCSA was required to apply a safety check list to guide their action, in which case, there would be no discretion in the process. Even where regulations spell out specific safety requirements, the process may not be specific and thus may provide the necessary element of discretion. Additionally, even if FMCSA's decision to issue the extension was made in error or was a poor decision, the decision was still a discretionary decision. For example, where "Coast Guard inspectors failed to uncover the fact that a ship failed to install handrails on a stairwell, as specifically required by regulation, the Seventh Circuit ruled that the discretionary function exception nonetheless applied because '[t]he discretionary function exception shields the entire inspection process including alleged negligent omissions. If the discretionary function exception could be pierced by showing negligent acts in implementing the discretionary function, the exception would be no shield at all.'" *Estate of Bernaldes v. U.S.*, 877 F. Supp. 301, 306 (1995)

(quoting *Cassens v. St. Louis River Cruise Lines, Inc.*, 44 F.3d 508, 515 (7th Cir.1995)).  The FMCSA exercised discretion both in determining whether a carrier may operate in interstate commerce and in formulating how best to undertake the compliance review process.  The regulation governing the decision to afford Sky Express a 10 day extension granted FMCSA discretion within the meaning of the discretionary function exception.  Therefore, the Court turns to the second element of the test—that is, whether FMCSA's discretionary action was "grounded in" the policy of the regulatory regime.

In examining the second prong of the test, the Court must keep in mind that the purpose of the discretionary function exception is to "'prevent judicial second-guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *Berkovitz,* 486 U.S. at 536–37.  The Court is concerned not only with second-guessing policy decisions of federal agencies and agents, but also with disrupting the regulatory efforts of the federal government by baring the government to tort liability for negligence in the course of carrying out the policies of a regulatory regime.  *See Baum*, 986 F.2d at 720 (finding that the discretionary function exception's purpose is to "protect the government from being hobbled in the discharge of its policy-driven duties by tort suits").  Once a court concludes that a government agent exercises discretion, if that discretion is exercised in the course of carrying out the agent's policy-driven duties, then the discretionary function exception will cover the agent's actions.  *Id.* at 721.  The wide scope of this aspect of the exception is illustrated by the Supreme Court's example of the type of activity that would not be considered policy-based:  "There are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish." *Gaubert*, 499 U.S. at 325 n.7.

Clearly, FMCSA's decision to grant the extension to facilitate its review and final determination was "based on the purposes that the regulatory regime seeks to accomplish" and

was within the purview of the policies behind the statute granting FMCSA authority to regulate interstate commercial vehicle transportation and to promote safety.  *Id.*  Because FMCSA made a discretionary decision involving safety and policy considerations, FMCSA performed a discretionary function.  Thus, the discretionary function exception does apply and the case must be dismissed for lack of subject matter jurisdiction because there has been no waiver of sovereign immunity.

## IV.   CONCLUSION

For the aforementioned reasons, the Court GRANTS Defendant's Motion.  ECF No. 14. The Court finds it unnecessary to address Defendant's alternative argument that Virginia law would not impose a duty on a private individual carrying out conduct undertaken by the government.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this   20th   day of October 2014.